**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HUAWEI TECHNOLOGIES CO., LTD.,
    Banxuegang Industrial Park. Buji
    Longgang Shenzhen 518129, P.R.C,

HUAWEI DEVICE USA, INC.,
    5700 Tennyson Parkway Suite 500
    Plano, TX 75024,

       Plaintiffs,

       v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,
    500 12th Street, SW
    Washington, D.C. 20536,

U.S. DEPARTMENT OF HOMELAND
SECURITY,
    Office of the General Counsel
    U.S. Department of Homeland Security
    2707 Martin Luther King Jr. Ave, SE
    Washington, DC 20528,

U.S. DEPARTMENT OF JUSTICE,
    950 Pennsylvania Avenue, N.W.
    Washington, D.C. 20530,

U.S. DEPARTMENT OF JUSTICE, OFFICE
OF THE ATTORNEY GENERAL,
    950 Pennsylvania Avenue, NW
    Washington, D.C. 20530,

U.S. DEPARTMENT OF JUSTICE, OFFICE
OF THE DEPUTY ATTORNEY GENERAL,
    950 Pennsylvania Avenue, NW
    Washington, D.C. 20530,

Civil Action No.____

COMPLAINT

U.S. DEPARTMENT OF JUSTICE, OFFICE
OF PUBLIC AFFAIRS,
 950 Pennsylvania Avenue, NW
 Washington, D.C. 20530,

U.S. DEPARTMENT OF JUSTICE, OFFICE
OF LEGISLATIVE AFFAIRS,
 950 Pennsylvania Avenue, NW
 Washington, D.C. 20530,

U.S. DEPARTMENT OF JUSTICE,
CRIMINAL DIVISION,
 950 Pennsylvania Avenue, NW
 Washington, D.C. 20530,

U.S. DEPARTMENT OF JUSTICE,
NATIONAL SECURITY DIVISION,
 950 Pennsylvania Avenue, NW
 Washington, D.C. 20530,

FEDERAL BUREAU OF INVESTIGATION,
 935 Pennsylvania Avenue, NW
 Washington, D.C. 20535,

UNITED STATES DEPARTMENT OF
STATE,
 The Executive Office
 Office of the Legal Advisor, Suite 5600
 600 19th Street, NW
 Washington, DC 20522,

OFFICE OF THE UNITED STATES TRADE
REPRESENTATIVE,
 600 17th Street NW
 Washington, D.C. 20508,

OFFICE OF MANAGEMENT AND
BUDGET,
 725 17th Street, NW
 Washington, D.C. 20503,

U.S. DEPARTMENT OF COMMERCE,
 1401 Constitution Avenue, NW
 Washington, D.C. 20230,

UNITED STATES DEPARTMENT OF
TREASURY,
    1500 Pennsylvania Avenue, NW
    Washington, D.C. 20220,

- and -

OFFICE OF FOREIGN ASSETS CONTROL,
    1500 Pennsylvania Avenue, NW
    Washington, D.C. 20220,

       Defendants.

# TABLE OF CONTENTS

NATURE OF THE ACTION ................................................................................................ 1

JURISDICTION AND VENUE ......................................................................................... 5

PARTIES ............................................................................................................................ 5

PLAINTIFFS' FOIA REQUESTS .................................................................................... 7

I.  Statutory Framework ................................................................................................ 7

II.  Facts ......................................................................................................................... 10

    A.  Non-Responsive Defendants .............................................................................. 15

        1.  DHS ............................................................................................................. 16

        2.  ICE .............................................................................................................. 18

        3.  DOJ Leadership .......................................................................................... 19

        4.  The Criminal Division ................................................................................ 21

        5.  The State Department .................................................................................. 23

        6.  OMB ........................................................................................................... 24

        7.  Commerce ................................................................................................... 26

        8.  Treasury ...................................................................................................... 27

        9.  OFAC .......................................................................................................... 28

    B.  Improper Response Defendants .......................................................................... 30

        1.  NSD ............................................................................................................. 31

        2.  FBI .............................................................................................................. 34

        3.  USTR ........................................................................................................... 37

PLAINTIFFS' REQUESTS FOR EXPEDITED PROCESSING ................................... 40

I.  Statutory and Regulatory Framework ...................................................................... 42

II.  Facts ......................................................................................................................... 44

    A.  Plaintiffs' Requests ............................................................................................ 44

    B.  Defendants' Denials ........................................................................................... 48

        1.  Commerce ................................................................................................... 48

        2.  DHS ............................................................................................................. 48

        3.  DOJ ............................................................................................................. 49

        4.  OMB ........................................................................................................... 50

        5.  USTR ........................................................................................................... 51

FIRST CAUSE OF ACTION ........................................................................................... 52

SECOND CAUSE OF ACTION ...................................................................................... 53

PRAYER FOR RELIEF ................................................................................................... 54

Plaintiffs Huawei Technologies Co., Ltd. ("Huawei Tech") and Huawei Device USA Inc. ("HDUSA," and together with Huawei Tech, "Plaintiffs"), by and through their attorneys, hereby allege as follows for their Complaint under the Freedom of Information Act ("FOIA") against Defendants Immigration and Customs Enforcement ("ICE"), United States Department of Homeland Security ("DHS"), United States Department of Justice ("DOJ"), DOJ Office of the Attorney General, DOJ Office of the Deputy Attorney General, DOJ Office of Public Affairs, DOJ Office of Legislative Affairs (together with the aforementioned DOJ Offices, "DOJ Leadership"), DOJ Criminal Division (the "Criminal Division"), DOJ National Security Division ("NSD"), Federal Bureau of Investigation (the "FBI"), United States Department of State (the "State Department"), Office of the United States Trade Representative ("USTR"), United States Department of the Treasury ("Treasury"), Office of Foreign Assets Control of the United States Department of the Treasury ("OFAC"), United States Department of Commerce ("Commerce"), and Office of Management and Budget ("OMB"):

## NATURE OF THE ACTION

1.      This is an action under FOIA, 5 U.S.C. § 552, for injunctive and other appropriate relief to compel the expedited release of documents Plaintiffs requested from the Defendant agencies and/or their components more than one year ago.  To date, Plaintiffs' requests have been met with a remarkable degree of stonewalling—conduct that is wholly inconsistent with FOIA's policy of promoting government openness and transparency, as well as FOIA's express requirement that agencies generally must act within 20 business days of receiving a request for the release of documents.  Here, Defendants have failed to issue a determination regarding nine of the twelve FOIA requests that are the subject of this lawsuit, despite having received those requests more than one year ago.  As to the three remaining requests, Defendants have responded in a

wholly inadequate fashion.  Only one Defendant has produced any documents at all, and its production consists of a grand total of eleven redacted pages.  Whether a product of design or neglect, Defendants' broad refusal to comply with their FOIA obligations is unacceptable.

2.      At issue in this case are twelve distinct but substantively similar FOIA requests directed at each of DHS, ICE, DOJ Leadership, the Criminal Division, NSD, the FBI, the State Department, USTR, Treasury, OFAC, Commerce, and OMB.  The requested documents relate to the United States's investigation into and prosecution of Plaintiffs and Huawei Tech Chief Financial Officer Meng Wanzhou, trade relations between the United States and China, and competition over the development of 5G technology.  The requestors, Plaintiffs here, are Huawei Tech, a privately held Chinese limited liability company that is one of the world's largest providers of telecommunications equipment, and HDUSA, a U.S. affiliate of Huawei Tech.

3.      Plaintiffs have made numerous efforts to facilitate Defendants' prompt and efficient processing of their FOIA requests.  In response, many Defendants simply ignored Plaintiffs' outreach.  Those that did respond refused to conduct adequate searches (or in some cases, any searches at all), failed to produce responsive records, and relied on blanket applications of FOIA exemptions asserted without any meaningful explanation.

4.       Defendants' failure to comply with their FOIA obligations is particularly troubling given the U.S. government's open commitment to "combat[ting] Huawei's dominance" in the market for 5G technology and its repeated singling out of Plaintiffs for adverse treatment.[1]

---

[1] Eamon Javers, U.S. Tries <u>Trump Official Compares Huawei to 'the Mafia' as White House Works on 5G Battle Plan</u>, CNBC (Feb. 25, 2020), https://www.cnbc.com/2020/02/25/trump-official-calls-huawei-mafia-as-white-house-works-on-5g-battle-plan.html; *see also* Alyza Sebenius, <u>U.S. Tries to Freeze Huawei Out of Europe with Court Argument</u>, Bloomberg (Apr. 9, 2019),

5.      For example, in 2018, Congress effectively debarred Huawei Tech and its corporate affiliates (collectively, "Huawei") by forbidding U.S. government agencies not only from purchasing specified Huawei equipment and services, but also from contracting with or awarding grants or loans to third parties who purchase or use such equipment or services.[2]

6.      More recently, in 2020, Commerce created a special Huawei-only export control rule that dramatically extends the reach of U.S. regulatory jurisdiction over products manufactured overseas using U.S. software and technology, and seeks to constrain the overseas transfer of such products to Plaintiffs and their non-U.S. corporate affiliates.[3]  In issuing this rule, which does not apply to any other company, Commerce admitted that its intent was to "narrowly and strategically target Huawei's acquisition of semiconductors," which are essential components for developing 5G technology.[4]

7.      Moreover, there are signs that the government is seeking to use the criminal charges against Plaintiffs and Ms. Meng to advance policy objectives unrelated to the evenhanded administration of criminal justice.  In particular, President Trump's extraordinary statements indicating that he would intervene in the criminal case against those parties for the benefit of U.S.

─────────────────────

https://www.bloomberg.com/news/articles/2019-04-09/u-s-tries-to-freeze-huawei-out-of-europe-with-court-argument ("The U.S. is engaged in a global campaign to keep Chinese tech companies out of advanced 5G networks promising faster connections, enabling uses such as autonomous vehicles and remote surgery.").

[2] *See* John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232 §889, 132 Stat. 1636 (2018).

[3] *See* 85 Fed. Reg. 29, 849 (May 15, 2020).

[4] Commerce Addresses Huawei's Efforts to Undermine Entity List, Restricts Products Designed and Produced with U.S. Technologies, U.S. Dep't Com. (May 15, 2020), https://www.commerce.gov/news/press-releases/2020/05/commerce-addresses-huaweis-efforts-undermine-entity-list-restricts.

trade interests suggest that the prosecution is being used as leverage in the U.S. government's ongoing trade dispute with China.[5]

8.      President Trump's statements are not the only indication that the investigation and prosecution of Plaintiffs have been undertaken as a trade negotiation tactic.  The indictment was presented as the sole justification for Huawei Tech's 2019 inclusion on Commerce's Entity List— a list of foreign organizations that are banned from receiving goods that are manufactured in the United States or otherwise subject to U.S. jurisdiction, unless the shipper receives a government license permitting the export.[6]

9.      Likewise, in a November 13, 2019 letter to the Chairman of the Federal Communications Commission ("FCC"), Attorney General William Barr cited his own Department's allegations against Plaintiffs as a reason for the FCC to ban the use of certain public funds to buy Huawei products.[7]

10.      Government records subject to disclosure under FOIA that Plaintiffs have requested may thus reveal that the government's avowed interests in economic "supremacy"[8] improperly influenced the decision to prosecute Plaintiffs and Ms. Meng.

---

[5] Betsy Klein & Ben Westcott, Trump Expresses Openness to Using Huawei CFO as Bargaining Chip in China Trade Talks, CNN (Dec. 12, 2018), https://www.cnn.com/2018/12/12/politics/trump-china-huawei-cfo/index.html.
[6] See 15 C.F.R. § 744.16 (2019).
[7] Letter from Att'y Gen. William P. Barr to the Hon. Ajit Pai, Chairman of the Federal Communications Commission (Nov. 13, 2019), https://ecfsapi.fcc.gov/file/11130351518674/Attorney%20General%20Letter%20FCC%20Docket%2018-89.pdf.
[8] Anna Fifield, Huawei Reports Record Profits Despite U.S. Pressure Campaign, Wash. Post (Mar. 29, 2019), https://www.washingtonpost.com/world/huawei-reports-record-profits-despite-us-pressure-campaign/2019/03/29/b531043a-5207-11e9-a3f7-78b7525a8d5f_story.html.

4

11.     Regardless of what Defendants' records may ultimately reveal, Defendants' pattern of non-cooperation and non-engagement is fundamentally at odds with the regime of transparency and accountability that is the cornerstone of FOIA.  Defendants are required to disclose non-exempt documents or reasonably segregable non-exempt portions thereof.

12.     Further, Defendants were required to produce the requested records on an expedited basis, which they have not done.  The requested records are the subject of widespread and exceptional media interest.  They also raise questions affecting public confidence in government institutions, including whether the U.S. government is wielding its prosecutorial power against disfavored parties to advance policy or even political objectives.  Defendants' regulations provide for expedited processing of FOIA requests under precisely these circumstances.  Yet, Plaintiffs' requests for expedited treatment were denied without valid justification.

13.     Defendants' across-the-board failure to respond adequately to Plaintiffs' FOIA requests, much less accord them the expedited treatment to which they are entitled, leaves Plaintiffs no practical option but to seek judicial intervention.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this case under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C § 1331.

15.     Venue is proper under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

16.     Plaintiff Huawei Tech is a global networking, telecommunications services company headquartered in Shenzhen, Guangdong, in the People's Republic of China.  It is a named defendant in *United States v. Huawei Technologies Co., Ltd.*, *et al.*, 18-CR-457, a criminal indictment brought by the United States Attorney's Office for the Eastern District of New York

("EDNY"), the Criminal Division, and NSD.  Huawei Tech is a "person" within the meaning of 5 U.S.C. § 551(2).

17.     Plaintiff HDUSA is a distributor of communication products headquartered in Plano, Texas.  It is a United States affiliate of Huawei Tech and is also a named defendant in the above-referenced criminal proceeding.  HDUSA is a "person" within the meaning of 5 U.S.C. § 551(2).

18.     Defendant DHS has possession or control over the records Plaintiffs seek in their FOIA requests to DHS and ICE.

19.     Defendant ICE is a component of DHS.  ICE has possession or control over the records Plaintiffs seek in their FOIA request to ICE.

20.     Defendant DOJ has possession or control over the records Plaintiffs seek in their FOIA requests to DOJ Leadership, the Criminal Division, NSD, and the FBI (collectively, the "DOJ Component Defendants").

21.     Defendant DOJ Leadership is made up of components of DOJ.  DOJ Leadership has possession or control over the records Plaintiffs seek in their FOIA request to DOJ Leadership.

22.     Defendant Criminal Division is a component of DOJ.  The Criminal Division has possession or control over the records Plaintiffs seek in their FOIA request to the Criminal Division.

23.     Defendant NSD is a component of DOJ.  NSD has possession or control over the records Plaintiffs seek in their FOIA request to NSD.

24.     Defendant FBI is a component of DOJ.  The FBI has possession or control over the records Plaintiffs seek in their FOIA request to the FBI.

25.     Defendant State Department has possession or control over the records Plaintiffs seek in their FOIA request to the State Department.

26.     Defendant USTR has possession or control over the records Plaintiffs seek in their FOIA request to USTR.

27.     Defendant Commerce has possession or control over the records Plaintiffs seek in their FOIA request to Commerce.

28.     Defendant Treasury has possession or control over the records Plaintiffs seek in their FOIA request to Treasury and OFAC.

29.     Defendant OFAC is a component of Treasury.  OFAC has possession or control over the records Plaintiffs seek in their FOIA request to OFAC.

30.     Defendant OMB has possession or control over the records Plaintiffs seek in their FOIA request to OMB.

31.     Each Defendant is an "agency" for purposes of 5 U.S.C. § 552(f)(1).

## PLAINTIFFS' FOIA REQUESTS

**I.     Statutory Framework**

32.     FOIA creates a broad entitlement to public records to promote transparency and accountability in the federal government.

33.     "Any person" may request information from an "agency" under FOIA.  5 U.S.C. § 552(a)(3)(A).   Under FOIA, a "person" includes "an individual, partnership, corporation, association, or public or private organization," other than an agency.  5 U.S.C. § 551(2).  "Agency" means "each authority of the Government of the United States," subject to certain exceptions not applicable here, and includes "any executive department . . . or other establishment in the executive branch of the government."  5 U.S.C. §§ 551(1), 552(f)(1).

34.     Upon receiving a FOIA request, an agency must "make reasonable efforts to search for" and identify responsive records.   5 U.S.C. § 552(a)(3)(C).   Only in certain limited circumstances, defined in the statute, may an agency withhold responsive records.   5 U.S.C. § 552(b)(1)–(9).  These limited circumstances are commonly referred to as "exemptions."

35.     Given FOIA's animating policies of transparency and accountability, there is a strong presumption in favor of disclosure.   The burden on an agency seeking to withhold responsive records under an exemption is substantial.

36.     The three Defendants that rendered a determination with respect to Plaintiffs' requests invoked one or more of the following exemptions:

a.     **Exemption 5** permits an agency to withhold responsive records where the records sought consist of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  This exemption protects documents covered by the "deliberative process privilege," which is designed to shield from disclosure certain pre-decisional documents that reflect the internal back-and-forth that precedes the adoption of a governmental policy.

b.     **Exemption 6** excludes from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  FOIA Exemption 6 generally protects against disclosure of personally identifying information, such as an individual's date or place of birth, employment history, and the like.

c.     **Exemption 7(A)** exempts records "compiled for law enforcement purposes" where disclosure of those records "could reasonably be expected to interfere

with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  Exemption 7(A) does not operate to immunize records from disclosure simply because they reside in an investigative file.  Rather, in order to withhold records pursuant to this Exemption, an agency must demonstrate precisely how the disclosure of a particular document or category of documents would interfere with a concrete ongoing or prospective enforcement action.

      d.    **Exemption 7(C)** covers certain records that are "compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  FOIA Exemption 7(C) is designed primarily to protect the privacy of suspects, witnesses, and investigators.

37.    When an agency invokes any of these exemptions, it bears the burden of proving that the exemption actually applies.  *See* 5 U.S.C. § 552(a)(4)(B).  The agency's claimed application of a particular exemption is subject to *de novo* review.  *Id.*

38.    Moreover, because FOIA prohibits the broad, categorical application of statutory exemptions, an agency must produce "[a]ny reasonably segregable portion" of a responsive record "after deletion of the portions which are exempt."  5 U.S.C. § 552(b).

39.    Consistent with its overall policy imperatives, FOIA imposes precise and strict deadlines on agencies that are in receipt of FOIA requests.  An agency is required to determine within 20 business days of receiving a FOIA request whether it will comply, and to "immediately notify the person making such request" of its determination and the reasons for it.  5 U.S.C. § 552(a)(6)(A)(i).  Only in specific, narrowly defined "unusual circumstances" is the agency permitted to extend this period, and, except in rare cases, any such extension may not exceed ten business days.  5 U.S.C. § 552(a)(6)(B)(i).

40.     When an agency determines that there are responsive, non-exempt records, it must then make those records "promptly available" to the requestor.  5 U.S.C. § 552(a)(6)(C)(i).

41.     When an agency fails to comply with the deadline to respond to a FOIA request, the requestor is deemed to have exhausted its administrative remedies.  At that point, the requestor has two options:  it may sue in federal district court, 5 U.S.C. § 552(a)(6)(C)(i), or it may bring an administrative appeal, without prejudice to suing later in the event of an unsuccessful appeal.  In the event the requestor opts to file an administrative appeal, the agency's response to that appeal is due within 20 business days of its receipt of the appeal.  5 U.S.C. § 552(a)(6)(A)(ii).

42.     Where an agency complies with the operative deadlines but fails to disclose some or all of the records sought consistent with its obligations under FOIA, the requestor may file an agency appeal and then pursue litigation if it disagrees with the determination on appeal.  5 U.S.C. § 552(a)(4)(B).

## II.     Facts

43.     On January 28, 2019, EDNY unsealed an indictment (the "Indictment") charging Plaintiffs, Ms. Meng, and Skycom Tech Co. Ltd.[9] with, among other things, a scheme to defraud unnamed global financial institutions by misrepresenting facts about Plaintiffs' business activity in Iran.  Exhibit ("Ex.") 1, Indictment ¶¶ 11–22, *United States v. Huawei Technologies Co., Ltd., et al.*, 18-CR-457 (S-2), unsealed Jan. 28, 2019.[10]

---

[9] The government alleges that Skycom Tech Co. Ltd., a company registered in Hong Kong with operations in Iran, functioned as Huawei Tech's Iran-based subsidiary.  Ex. 1 ¶ 3.

[10] As referenced herein and in Plaintiffs' FOIA requests, the "Indictment" refers to the second superseding indictment.  On February 13, 2020, EDNY unsealed a third superseding indictment that realleged the charges in the second superseding indictment and brought additional charges related to racketeering and intellectual property offenses.

44.     The Indictment also charged Plaintiffs and other defendants with substantive violations of financial sanctions relating to Iran.  Ex. 1 ¶ 11.  Additionally, it alleged that Plaintiffs participated in a scheme to misrepresent to another bank the reasons for the termination of Plaintiffs' relationship with an unnamed financial institution later revealed to be HSBC,[11] Ex. 1 ¶ 24, along with related money laundering and obstruction of justice charges, Ex. 1 ¶¶ 53–56.

45.     On May 1, 2019, Plaintiffs submitted a series of similar FOIA requests to eleven agencies or components thereof, including all Defendants in this action with the exception of OMB.  Plaintiffs submitted an additional, similar FOIA request to Defendant OMB on September 23, 2019.  These requests seek documents relating to, among other things, how U.S.-China trade relations and the global competition to develop 5G technology may have influenced the government's investigation into Plaintiffs and Ms. Meng, and communications between government officials and press outlets related to Huawei and Ms. Meng.  These requests are attached hereto as Exhibits 2–13.

46.     In particular, Plaintiffs' FOIA requests to Defendants included the following:

a.  A request to Commerce (Ex. 2), each of the DOJ Component Defendants (Exs. 3–6), OMB (Ex. 7), Treasury (Ex. 8), OFAC (Ex. 9), and USTR (Ex. 10) for communications with *Reuters* journalists pertaining to any Plaintiffs and their corporate affiliates or Ms. Meng, including how any disclosures from HSBC or its Corporate Compliance Monitor, Michael Cherkasky contributed to the case against Huawei or Ms. Meng.

---

[11] *See* Karen Freifeld & Steve Stecklow, Exclusive: HSBC probe helped lead to U.S. charges against Huawei CFO, (Feb. 26, 2019), https://ca.reuters.com/article/topNews/idCAKCN1QF1IA-OCATP.

b.  A request to Commerce (Ex. 2), DHS (Ex. 11), each of the DOJ Component Defendants (Exs. 3–6), OMB (Ex. 7), the State Department (Ex. 12), Treasury (Ex. 8), OFAC (Ex. 9), and USTR (Ex. 10) for communications between the relevant agencies and the White House pertaining to the Indictment, the U.S.-China trade relationship, and/or 5G technology or competition (with reference to Plaintiffs and their corporate affiliates).

c.  A request to Commerce (Ex. 2), DHS (Ex. 11), ICE (Ex. 13), each of the DOJ Component Defendants (Exs. 3–6), OMB (Ex. 7), the State Department (Ex. 12), Treasury (Ex. 8), OFAC (Ex. 9), and USTR (Ex. 10) for intra-agency communications regarding the Indictment.

d.  A request to Commerce (Ex. 2), DHS (Ex. 11), ICE (Ex. 13), each of the DOJ Component Defendants (Exs. 3–6), OMB (Ex. 7), the State Department (Ex. 12), Treasury (Ex. 8), OFAC (Ex. 9), and USTR (Ex. 10) for communications between Congress and the relevant agencies pertaining to Plaintiffs, their corporate affiliates, or Ms. Meng.

e.  A request to DHS (Ex. 11), ICE (Ex. 13), each of the DOJ Component Defendants (Exs. 3–6), and the State Department (Ex. 12) for communications and materials pertaining to former Attorney General Jeff Sessions's so-called "China Initiative," the primary purpose of which is "identifying and prosecuting those engaged in trade secret theft, hacking and economic espionage."[12]

---

[12] The China Initiative is described in former Attorney General Sessions's China Initiative Fact Sheet, available at https://www.justice.gov/opa/spech/file/1107256/download.

f.  A request to Commerce (Ex. 2), each of the DOJ Component Defendants (Exs. 3–6), OMB (Ex. 7), the State Department (Ex. 12), Treasury (Ex. 8), OFAC (Ex. 9), and USTR (Ex. 10) for communications between the relevant agencies and employees of certain telecommunications companies and HSBC pertaining to the Indictment or any United States policy pertaining to 5G.

g.  A request to DHS (Ex. 11), ICE (Ex. 13), the DOJ Component Defendants (Exs. 3–6), and the State Department (Ex. 12) for communications with certain Canadian authorities that participated in the investigation or arrest of Ms. Meng.[13]

47.  These requests are primarily aimed at identifying communications that could indicate improper bases for the prosecution of Plaintiffs and Ms. Meng, such as to interfere with Plaintiffs' dominance in the 5G marketplace or strengthen the United States' position in trade negotiations with China; impropriety in the development and implementation of the China Initiative; improper communications between government officials and the press regarding the investigation of Plaintiffs and Ms. Meng; and/or improper conduct by the U.S. government that may have infringed on Ms. Meng's rights under U.S. or Canadian law.

48.  Given the exceptional media interest in these issues and the fact that they implicate grave issues of government integrity that potentially affect public confidence in government

---

[13] Ms. Meng was arrested by Canadian authorities on December 6, 2018 upon an extradition request from the U.S.  Ms. Meng was charged with bank and wire fraud in violation of U.S. sanctions on Iran.  Canadian authorities and U.S. authorities likely coordinated in the arrest of Ms. Meng, and in December 2019, the British Columbia Supreme Court found that Ms. Meng's objections to extradition were substantial enough to warrant compelling the Canadian authorities to make additional disclosures and require a hearing.  *United States v. Meng*, 2019 BCSC 2137 (Can.).

institutions, Plaintiffs submitted requests for expedited processing of nine of the twelve FOIA requests addressed in this Complaint under applicable regulations.[14]

49.     In the weeks and months that followed, Plaintiffs worked to obtain responsive records in a timely manner.  Plaintiffs made frequent attempts to contact Defendants and made good-faith efforts to prioritize their requests in order to facilitate the prompt processing of such requests.

50.     Despite these efforts, Plaintiffs have received next to nothing from Defendants.

51.     With respect to nine of the twelve FOIA requests at issue, the relevant Defendants have failed to act on Plaintiffs' FOIA requests.  Defendant ICE simply ignored Plaintiffs' follow-up communications.  Defendants Commerce, DHS, DOJ Leadership, Criminal Division, State Department, Treasury, OFAC, and OMB have failed to make the "determination" required of them by statute.  Rather than timely search their records and identify records subject to disclosure, these Defendants have repeatedly claimed that Plaintiffs' requests are "in process," even though the statutory deadlines for their response and "determination" have long passed.

52.     With respect to the remaining three FOIA requests, the relevant Defendants (NSD, the FBI, and USTR) have conducted wholly inadequate searches and failed to produce responsive documents on the basis of FOIA exemptions invoked improperly.  At the very least, these Defendants must conduct a reasonable and adequate search, produce those records that may not be withheld, and disclose information about the records that have been withheld.  They have taken none of these actions.

--------

[14] No such request was made to the State Department, Treasury, or OFAC because the FOIA regulations adopted by those agencies do not recognize this basis for seeking expedited processing.

14

53.     Although not required, in connection with nine of their twelve FOIA requests, Plaintiffs filed a timely administrative appeal with the relevant agency Defendant in an effort to quickly resolve their claims with Defendants directly.  Some of these appeals were denied for reasons that do not pass legal muster.  The others went entirely unanswered.

54.     As a result, Defendants have violated FOIA by failing to timely respond to Plaintiffs' FOIA requests and/or to produce responsive, non-exempt records.

55.     Plaintiffs have exhausted or are deemed to have exhausted their administrative remedies with respect to each Defendant, and injunctive relief is appropriate to remedy Defendants' failure to promptly release the requested information.

### A.     Non-Responsive Defendants

56.     DHS, ICE, DOJ Leadership, the Criminal Division, DOJ (as the agency that houses DOJ Leadership and the Criminal Division), the State Department, OMB, Commerce, Treasury, and OFAC (collectively, the "Non-Responsive Defendants") have not issued a determination in response to Plaintiffs' FOIA requests.

57.     All Non-Responsive Defendants have missed their deadline to respond to Plaintiffs' FOIA requests.  All ten of the Non-Responsive Defendants were required to render a determination on Plaintiffs' FOIA requests over six months ago; eight of them were required to do so over a year ago.  As such, Plaintiffs' claims against the Non-Responsive Defendants are ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

58.     Additionally, as to those Non-Responsive Defendants with whom Plaintiffs filed an optional agency appeal, the Non-Responsive Defendants have either failed to respond entirely or else informed Plaintiffs that they would not rule on any appeal so long as Plaintiffs' FOIA requests remained pending—regardless of whether the statutory deadlines for responding to those requests had passed.

59.     The applicable deadlines and response dates for the Non-Responsive Defendants are first summarized in the chart immediately below, and are then detailed in the sections of this Complaint that follow.

| NON-RESPONSIVE DEFENDANTS — Deadlines and Response Dates | | | | | | |
|---|---|---|---|---|---|---|
| **Defendant Agency** | **FOIA Request Date** | **Response to FOIA Request Due** | **Response to FOIA Request Received** | **Optional FOIA Appeal Filed** | **Response to FOIA Appeal Due** | **Response to FOIA Appeal Received** |
| **DHS** | May 1, 2019 | July 5, 2019 | Never | April 3, 2020 | June 5, 2020[15] | Never |
| **ICE** | May 1, 2019 | May 30, 2019 | Never | Sept. 23, 2019 | Nov. 26, 2019[16] | Never |
| **DOJ Leadership** | May 1, 2019 | May 30, 2019 | Never | Nov. 5, 2019 | Dec. 5, 2019 | Mar. 10, 2020 (Refused to rule on appeal) |
| **Criminal Division** | May 1, 2019 | May 30, 2019 | Never | Dec. 16, 2019 | Jan. 15, 2020 | Jan. 30, 2020 (Refused to rule on appeal) |
| **State Department** | May 1, 2019 | July 17, 2019 | Never | Nov. 5, 2019 | Dec. 5, 2019 | Nov. 12, 2019 (Refused to rule on appeal) |
| **OMB** | Sept. 23, 2019 | April 9, 2020 | Never | N/A | N/A | N/A |
| **Commerce** | May 1, 2019 | Oct. 22, 2019 | Never | N/A | N/A | N/A |
| **Treasury Department** | May 1, 2019 | April 9, 2020 | Never | N/A | N/A | N/A |
| **OFAC** | May 1, 2019 | May 30, 2019 | Never | Dec. 16, 2019 | Jan. 15, 2020 | Jan. 17, 2020 (Refused to rule on appeal) |

**1.     DHS**

60.     On May 1, 2019, Plaintiffs submitted their FOIA request to DHS.  Ex. 11; *supra* ¶¶ 45–46.

---

[15] This reflects the due date for DHS to respond after Plaintiffs' appeal was remanded to DHS by the Office of the Administrative Law Judge, DHS, United States Coast Guard.
[16] This reflects the due date for ICE to respond after Plaintiffs' appeal was remanded to ICE by the ICE Office of the Principal Legal Advisor.

61.     On May 3, 2019, DHS requested a list of custodians, terms, and date ranges in order to help locate records responsive to Plaintiffs' request.

62.     On June 6, 2019, in response to that request, Plaintiffs provided search terms, custodians, and date ranges to DHS.

63.     Even assuming DHS's time to respond to Plaintiffs' FOIA request did not begin until it received Plaintiffs' search terms, DHS's response to Plaintiffs' FOIA request was due by July 5, 2019.  5 U.S.C. § 552(a)(6)(A)(ii)(I).

64.     DHS missed its deadline by failing to respond to Plaintiffs' FOIA request.

65.     In the weeks and months that followed submission of its search terms, Plaintiffs followed up with DHS several times.  Specifically, Plaintiffs sent emails on June 20, July 15, August 16, and September 6, 2019, to inquire about the status of their request.

66.     Finally, on September 11, 2019, DHS responded to Plaintiffs and advised that while DHS had located potentially responsive records, it could take three to six months to process Plaintiffs' request.

67.     On October 17, 2019, Plaintiffs followed up again with DHS and requested an update regarding the timeline for DHS's overdue production.

68.     On November 1, 2019, DHS responded it "hope[d]" to be able to process Plaintiffs' request by the end of 2019.

69.     On April 3, 2020, having received no further update from DHS, Plaintiffs filed an administrative appeal pursuant to 5 U.S.C. § 552(a)(6) on the grounds that DHS failed to render a determination regarding their FOIA request within the time allowed.  Ex. 14.

70.     On May 7, 2020, the Office of the Administrative Law Judge, DHS, United States Coast Guard, remanded Plaintiffs' request to DHS for "additional processing."  Ex. 15.

71.     DHS was required to respond within 20 business days of remand (*i.e.*, June 5, 2020).

72.     On August 20, 2020, the Administrative Law Judge, DHS, United States Coast Guard wrote to Plaintiffs and acknowledged that DHS's deadline to respond to Plaintiffs' FOIA request had passed, and that as such Plaintiffs were entitled to "pursue the appeal in United States District Court."  Ex. 16.

73.     To date, no records responsive to Plaintiffs' request have been released by DHS, and Plaintiffs have not received any substantive communication regarding the production of responsive records.

74.     Plaintiffs are deemed to have exhausted their administrative remedies with respect to their FOIA request to DHS because DHS has failed to comply with the time limits set forth in the statute.  Accordingly, their claim is ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

## 2.     ICE

75.     On May 1, 2019, Plaintiffs submitted their FOIA request to ICE.  Ex. 13; *supra* ¶¶ 45–46.

76.     On May 15, 2019, Plaintiffs received an email from ICE acknowledging receipt of their FOIA request.

77.     ICE's response to Plaintiffs' FOIA request was due by May 30, 2019.

78.     ICE missed its deadline by failing to respond to Plaintiffs' FOIA request.

79.     In the weeks and months that followed the submission of their FOIA request, Plaintiffs sent emails on July 8, July 15, August 16, and September 6, 2019, to inquire about the status of their request and offer to engage in discussions to narrow the requests and facilitate a timely resolution.  Plaintiffs received no response.

80.     On September 23, 2019—nearly five months after submitting their FOIA request, and having received no response at all from ICE—Plaintiffs filed an administrative appeal pursuant to 5 U.S.C. § 552(a)(6) on the grounds that ICE failed to render a determination regarding their FOIA request within the time allowed.  Ex. 17.

81.     On October 28, 2019, ICE informed Plaintiffs that, following its review of the administrative record, it had "determined that a new search(s), or modifications to the existing search(s), could be made" and that it was "remanding [Plaintiffs'] appeal to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents."  Ex. 18.

82.     ICE was required to respond within 20 business days of remand (*i.e.*, November 26, 2019).  To date, Plaintiffs have received no response to their appeal or further communication from ICE concerning their FOIA request.

83.     To date, no records responsive to Plaintiffs' request have been released by ICE, and Plaintiffs have not received any substantive communication regarding the production of responsive records.

84.     Plaintiffs are deemed to have exhausted their administrative remedies with respect to their FOIA request to ICE because ICE has failed to comply with the time limits set forth in the statute.  Accordingly, their claim is ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

### 3.     DOJ Leadership

85.     On May 1, 2019, Plaintiffs submitted their FOIA request to DOJ Leadership.  Ex. 3; *supra ¶¶* 45–46.

86.     That same day, Plaintiffs received an automated electronic notice confirming that their FOIA request had been submitted.

87.     On May 10, 2019, Plaintiffs received a letter acknowledging receipt of their FOIA request to DOJ Leadership.

88.     DOJ Leadership's response to Plaintiffs' FOIA request was due by May 30, 2019.

89.     DOJ Leadership missed its deadline by failing to respond to Plaintiffs' FOIA request.

90.     Over the course of July and August 2019, Plaintiffs attempted to follow up on their FOIA request to DOJ Leadership and exchanged several voicemails with the FOIA analyst assigned to their request.  However, Plaintiffs' counsel and the FOIA analyst were not able to connect, and after August 2019 the analyst stopped responding to Plaintiffs' inquiries.

91.     To date, no records responsive to Plaintiffs' request have been released by DOJ Leadership, and Plaintiffs have not received any substantive communication regarding the production of responsive records.

92.     On November 5, 2019—having received no substantive response from DOJ Leadership for more than six months since submitting their FOIA request—Plaintiffs filed an administrative appeal with DOJ pursuant to 5 U.S.C. § 552(a)(6) on the basis that DOJ Leadership had failed to timely respond to Plaintiffs' request.  Ex. 20.

93.     DOJ was required to respond to Plaintiffs' appeal by December 5, 2019.  DOJ failed to respond by that deadline.

94.     On March 11, 2020—more than three months after the deadline—Plaintiffs received a response from DOJ.  Ex. 21.  That response advised Plaintiffs that although FOIA authorizes Plaintiffs to file a lawsuit when, as here, an agency takes longer than the statutory time period to respond to a request, DOJ regulations provide for an administrative appeal "only after there has been an adverse determination by a component."  *Id.*  In other words, DOJ advised

Plaintiffs that so long as their FOIA request to DOJ Leadership remained unanswered, they had no administrative remedy, and their only recourse was to file a lawsuit.

95.     To date, no records responsive to Plaintiffs' request have been released by DOJ Leadership, and Plaintiffs have not received any substantive communication from DOJ Leadership regarding the production of responsive records.

96.     Plaintiffs are deemed to have exhausted their administrative remedies with respect to their FOIA request to DOJ Leadership because DOJ Leadership has failed to comply with the time limits set forth in the statute.  Accordingly, Plaintiffs' claim is ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

### 4.     The Criminal Division

97.     On May 1, 2019, Plaintiffs submitted their FOIA request to the Criminal Division. Ex. 4; *supra* ¶¶ 45–46.

98.     On May 10, 2019, Plaintiffs received a letter acknowledging that the Criminal Division had received Plaintiffs' FOIA request.

99.     The Criminal Division's response to Plaintiffs' FOIA request was due by May 30, 2019.

100.     The Criminal Division missed its deadline by failing to respond to Plaintiffs' FOIA request.

101.     On July 12, 2019, Plaintiffs and the Chief of the FOIA/Public Affairs Unit held a phone call to discuss the status of the request and whether there was anything Plaintiffs could do to facilitate the processing of their request.  The Chief of the FOIA/Public Affairs Unit advised Plaintiffs that the Criminal Division would compile a log of responsive documents, which Plaintiffs could then use to identify the highest priority documents.

102.    In the months that followed, Plaintiffs followed up on this conversation by email on five occasions during September, October, and November 2019, to inquire about the status of the Criminal Division's log, and more broadly, Plaintiffs' FOIA request.

103.    Despite these repeated inquiries, the Criminal Division failed to produce any kind of log or otherwise respond substantively to Plaintiffs' FOIA request.  On November 12, 2019, the Criminal Division informed Plaintiffs via letter that a search for responsive records was "pending."

104.    On December 16, 2019—after having received no substantive response to their FOIA request in the more than seven months since their submission of that request—Plaintiffs filed an administrative appeal with DOJ pursuant to 5 U.S.C. § 552(a)(6) on the basis that the Criminal Division had failed to render a determination regarding Plaintiffs' FOIA request within the time allowed.  Ex. 22.

105.    DOJ was required to respond to Plaintiffs' appeal by January 15, 2019.  DOJ failed to respond by that deadline.

106.    On January 30, 2020, Plaintiffs received a response from DOJ.  Ex. 23.  That response advised Plaintiffs that although FOIA authorizes Plaintiffs to file a lawsuit when, as here, an agency takes longer than the statutory time period to respond to a request, DOJ regulations provide for an administrative appeal "only after there has been an adverse determination by a component."  *Id.*  In other words, DOJ advised Plaintiffs that so long as their FOIA request to the Criminal Division remained unanswered, they had no administrative remedy, and their only recourse was to file a lawsuit.

107.    To date, no records responsive to Plaintiffs' request have been released by the Criminal Division, and Plaintiffs have not received any substantive communication from the Criminal Division regarding the production of responsive records.

108.    Plaintiffs are deemed to have exhausted their administrative remedies with respect to their FOIA request to the Criminal Division because the Criminal Division has failed to comply with the time limits set forth in the statute.  Accordingly, Plaintiffs' claim is ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

### 5.    The State Department

109.    On May 1, 2019, Plaintiffs submitted their FOIA request to the State Department. Ex. 12; *supra ¶¶* 45–46.

110.    Beginning on May 15, 2019, Plaintiffs and the State Department engaged in discussions via email and phone to develop search terms to more efficiently process Plaintiffs' request.

111.    On June 18, 2019, Plaintiffs and the State Department agreed upon a set of priority search terms.  Further, Plaintiffs agreed to split their original FOIA request into two "tiers," organized based on the priority of particular search terms, in order to receive documents responsive to their highest priority requests as soon as possible.

112.    Even assuming the State Department's time to respond to Plaintiffs' FOIA request did not begin until it had reached an agreement with Plaintiffs regarding search terms, the State Department's response to Plaintiffs' FOIA request was due by July 17, 2019.  5 U.S.C. § 552(a)(6)(A)(ii)(I).

113.    The State Department failed to respond by that deadline.

114.    Plaintiffs sent follow-up inquiries to the State Department by email on August 16 and September 6, 2019.  On September 17, 2019, the State Department replied with a vague response advising Plaintiffs that they would be notified of the results of the State Department's search and review efforts "as soon as that information becomes available."

115.    On November 5, 2019—having received no substantive response from the State Department in the nearly five months since agreeing upon priority search terms—Plaintiffs filed an administrative appeal pursuant to 5 U.S.C. § 552(a)(6) on the ground that the State Department had failed to render a determination regarding Plaintiffs' FOIA request within the time allowed under the statute.  Ex. 24.

116.    On November 12, 2019, the State Department responded and advised Plaintiffs that, although the State Department had not responded to Plaintiffs' FOIA request within the applicable statutory time period and accordingly Plaintiffs were entitled to file suit, Plaintiffs' FOIA request was "not subject to administrative appeal at this time, since no specific material has been denied in response to the request."  Ex. 25.  According to the Appeals Officer, there was no "basis for an administrative appeal of a request that is still being processed."  *Id.*  In other words, so long as their FOIA request to the State Department remained unanswered, Plaintiffs had no administrative remedy, and their only recourse was to file a lawsuit.

117.    To date, the State Department has not released any records responsive to Plaintiffs' request.  Further, Plaintiffs have not received any substantive communication regarding the processing of their request or the results of the State Department's search and review efforts since September 2019.

118.    Plaintiffs are deemed to have exhausted their administrative remedies with respect to their FOIA request to the State Department because the State Department has failed to comply with the time limits set forth in the statute.  Accordingly, Plaintiffs' claim is ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

**6.      OMB**

119.    On September 23, 2019, Plaintiffs submitted their FOIA request to OMB, which included suggested search terms, custodians, and date ranges.  Ex. 7; *supra* ¶¶ 45–46.

120.    OMB acknowledged receipt of Plaintiffs' FOIA request on September 24, 2019.[17]

121.    On October 17, 2019, Plaintiffs contacted OMB to ask whether there was anything they could do to facilitate the processing of the request.  OMB responded that it had begun a search for responsive documents but was still processing Plaintiffs' request.  OMB did not provide an estimate as to when it expected to be able to produce responsive documents or otherwise render a determination with respect to Plaintiffs' request.

122.    On December 6, 2019, Plaintiffs contacted OMB to follow up on the status of OMB's search.  On December 18, 2019, OMB responded that the search terms and custodians Plaintiffs provided had returned many potentially responsive documents and requested Plaintiffs further narrow their custodian list.

123.    On March 12, 2020, Plaintiffs submitted a narrowed set of search terms and custodians to OMB.  OMB never responded.

124.    Even assuming OMB's time to respond to Plaintiffs' FOIA request did not begin until it received Plaintiffs' narrowed list of custodians, OMB's response to Plaintiffs' FOIA request was due by April 9, 2020.

125.    OMB missed its deadline by failing to respond to Plaintiffs' FOIA request.

126.    To date, no records responsive to Plaintiffs' request have been released by OMB, and Plaintiffs have not received any substantive communication from OMB regarding the production of responsive records.

---

[17] In what may have been an administrative error, OMB appears to have processed Plaintiffs' FOIA request twice, as it confirmed receipt of Plaintiffs' FOIA request again on September 27, 2019 and assigned it a different FOIA number.

127.    Plaintiffs are deemed to have exhausted their administrative remedies with respect to their FOIA request to OMB because OMB has failed to comply with the time limits set forth in the statute.  Accordingly, Plaintiffs' claim is ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

### 7.    Commerce

128.    On May 1, 2019, Plaintiffs submitted their FOIA request to Commerce.  Ex. 2; *supra* ¶¶ 45–46.

129.    Beginning on May 29, 2019, Plaintiffs made several attempts to reach Commerce to discuss the status of their FOIA request, each of which went unanswered.  Specifically, Plaintiffs contacted Commerce by phone or email on May 29, July 9, and July 15, 2019.

130.    Finally, Plaintiffs reached Commerce by telephone on September 23, 2019 to discuss the status of Plaintiffs' request and any measures they could take to facilitate the prompt processing of that request.  On that call, Plaintiffs informed Commerce that it could use the search terms Plaintiffs had provided to its sub-component, the Bureau of Industry and Security, in processing Plaintiffs' request to Commerce.

131.    Plaintiffs then contacted Commerce by phone on October 29 and October 31, 2019, to follow up on the status of their FOIA request.  Commerce responded by email on October 31, 2019 and indicated that, despite several months having passed since it received Plaintiffs' FOIA request, Commerce was still processing Plaintiffs' request.  On November 5, 2019, Commerce again advised Plaintiffs that it was still processing their request.

132.    Even assuming that Commerce's time to respond to Plaintiffs' FOIA request did not begin until it received Plaintiffs' search terms on September 23, 2020, Commerce's response to Plaintiffs' FOIA request was due by October 22, 2019.  5 U.S.C. § 552(a)(6)(A)(ii)(I).

133.    Commerce failed to respond by that deadline.

134.    To date, Commerce has not released any records responsive to Plaintiffs' request. Further, Plaintiffs have not received any substantive communication regarding the processing of their request or the results of Commerce's search and review efforts since November 2019.

135.    Plaintiffs are deemed to have exhausted their administrative remedies with respect to their FOIA request to Commerce because Commerce has failed to comply with the time limits set forth in the statute.   Accordingly, Plaintiffs' claim is ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

### 8.    Treasury

136.    On May 1, 2019, Plaintiffs submitted their FOIA request to Treasury.  Ex. 8; *supra* ¶¶ 45–46.

137.    That same day, Plaintiffs received an automated electronic confirmation that Treasury had received the request.

138.    On May 29, 2019, Treasury informed Plaintiffs that their FOIA request would begin to be processed, but that it would be "several months" before a search would be conducted for potentially responsive records.

139.    Beginning on July 9, 2019, Plaintiffs and Treasury engaged in discussions via email and phone to develop search terms to facilitate the processing of Plaintiffs' request.  On August 2, 2019, Plaintiffs sent Treasury a set of search terms.

140.    From August 2019 through December 2019, Plaintiffs followed up several times on the status of their FOIA request.  Treasury informed Plaintiffs that there were numerous cases ahead of theirs in the queue.

141.    On January 9, 2020, Plaintiffs, Treasury, and OFAC held a conference call to discuss measures to more efficiently process Plaintiffs' FOIA requests.  Based on that phone call, Plaintiffs provided revised search terms to Treasury on March 12, 2020.

142.    On April 20, 2020, Plaintiffs followed up with Treasury on the status of their request.  Treasury responded that the "program offices" assigned to Plaintiffs' request had not yet identified potentially responsive records.

143.    Even assuming Treasury's time to respond to Plaintiffs' FOIA request did not begin until it received Plaintiffs' revised search terms, Treasury's response to Plaintiffs' FOIA request was due by April 9, 2020.  5 U.S.C. § 552(a)(6)(A)(ii)(I).

144.    Treasury failed to respond by that deadline.

145.    To date, Treasury has not released any records responsive to Plaintiffs' request.  Further, Plaintiffs have not received any substantive communication regarding the processing of their request or the results of Treasury's search and review efforts since March 2020.

146.    Plaintiffs are deemed to have exhausted their administrative remedies with respect to their FOIA request to Treasury because Treasury has failed to comply with the time limits set forth in the statute.   Accordingly, Plaintiffs' claim is ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

### 9.    OFAC

147.    On May 1, 2019, Plaintiffs submitted their FOIA request to OFAC.  Ex. 9; *supra* ¶¶ 45–46.

148.    OFAC did not acknowledge receipt of Plaintiffs' request.[18]

149.    OFAC's response to Plaintiffs' FOIA request was due by May 30, 2019.

150.    OFAC missed its deadline by failing to respond to Plaintiffs' FOIA request.

---

[18] While OFAC acknowledged receipt of Plaintiffs' FOIA request to Treasury—which Treasury had referred to OFAC—OFAC has not, to date, acknowledged Plaintiffs' request directed to OFAC specifically.

151.    On December 16, 2019, having still received no response from OFAC, Plaintiffs filed an administrative appeal with OFAC pursuant to 5 U.S.C. § 552(a)(6) on the basis that OFAC failed to timely respond to Plaintiffs' request.  Ex. 26.

152.    On January 9, 2020, while Plaintiffs' agency appeal was pending, OFAC joined a conference call with Plaintiffs and Treasury to discuss measures to more efficiently process Plaintiffs' FOIA requests—even though the deadline to respond to Plaintiffs' request to OFAC had long passed.

153.    On January 17, 2020, OFAC dismissed Plaintiffs' appeal on the grounds that OFAC regulations provide for an administrative appeal only after there has been an "initial FOIA determination" and that "the absence of a response within the time limits specified in the FOIA is not a basis for filing an administrative appeal."  Ex. 27.  In other words, OFAC advised Plaintiffs that so long as their FOIA request remained unanswered, they had no administrative remedy, and their only recourse was to file a lawsuit.

154.    On March 12, 2020, Plaintiffs provided Treasury with search terms in a final effort to facilitate the processing of its overdue request, which Treasury then passed along to OFAC.

155.    Even assuming this restarted OFAC's time to respond to Plaintiffs' FOIA request, OFAC's response to Plaintiffs' FOIA request was due April 9, 2020.  5 U.S.C. § 552(a)(6)(A)(ii)(I).

156.    No matter the deadline, OFAC missed its deadline by failing to respond to Plaintiffs' FOIA request.

157.    On July 21, 2020, OFAC informed Plaintiffs that there were still "178 cases pending" ahead of their request.

158.    To date, no records responsive to Plaintiffs' request have been released by OFAC.

159.    Plaintiffs are deemed to have exhausted their administrative remedies with respect to their FOIA request to OFAC because OFAC has failed to comply with the time limits set forth in the statute.    Accordingly, Plaintiffs' claim is ripe for adjudication under 5 U.S.C. § 552(a)(6)(C)(i).

### B.    Improper Response Defendants

160.    In contrast to the Non-Response Defendants, the remaining Defendants—NSD, the FBI, DOJ (as the agency that houses NSD and the FBI), and USTR (collectively, the "Improper Response Defendants")—have rendered determinations on Plaintiffs' FOIA requests. Nonetheless, these agencies' responses have not remotely satisfied their obligations under FOIA, in substantial part because they have refused to undertake reasonable and adequate searches for responsive documents, and failed to produce responsive, non-exempt materials.

161.    Instead, these Defendants improperly asserted categorical exemptions without meaningful explanation or detail, in violation of FOIA and its corresponding regulations.    These failures are summarized in the chart immediately below, and are then detailed in the sections of this Complaint that follow.

162.    Plaintiffs' administrative appeals of these responses have been summarily and improperly denied.  Accordingly, Plaintiffs' claims against the Improper Response Defendants are ripe for adjudication under 5 U.S.C. § 552(a)(4)(B).

| IMPROPER RESPONSE DEFENDANTS — FOIA Request Determinations | | | |
|---|---|---|---|
| Defendant Agency | Search Purportedly Performed | Basis for Withholding Responsive Records | Records Produced |
| **NSD** | None | FOIA exemptions 6, 7(A), 7(C) | None |
| **FBI** | Scope not specified; all responsive documents allegedly located in a single investigative file | FOIA exemptions 6, 7(A), 7(C) | None |
| **USTR** | Ran only initial search terms provided | FOIA exemption 5 | 11 partially redacted pages |

### 1.    NSD

163.    On May 1, 2019, Plaintiffs submitted their FOIA request to NSD.  Ex. 5; *supra* ¶¶ 45–46.

164.    NSD's response to Plaintiffs' FOIA request was due by May 30, 2019.  NSD failed to respond by that deadline.

165.    On June 3, 2019, NSD sent Plaintiffs an acknowledgement that Plaintiffs' FOIA request had been received.

166.    On June 18, 2019, NSD asserted, without explanation, that any records that NSD "may have in response to [Plaintiffs'] request are exempt from disclosure" under FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).  Ex. 28 at 2.

167.    On July 22, 2019, Plaintiffs spoke with the FOIA Officer assigned to Plaintiffs' request to NSD to inquire about the denial of their FOIA request.  During that call, the FOIA Officer advised Plaintiffs that NSD had not, in fact, performed any search for responsive records,

based on NSD's belief that any responsive records would necessarily be withheld under FOIA Exemption 7(A).

168.    On September 11, 2019, Plaintiffs filed an administrative appeal with DOJ pursuant to 5 U.S.C. § 552(a)(6) on the grounds that NSD improperly withheld responsive records and failed to perform an adequate search.  Ex. 29.

169.    In their appeal, Plaintiffs explained that NSD's blanket assertion of FOIA Exemption 7(A) was improper as a matter of law—particularly given NSD's admitted failure to undertake any search at all.  *Id.*  Plaintiffs asserted that NSD's conclusion that all responsive records would necessarily be exempt did not relieve the agency of its burden to undertake a reasonable search.  *Id.*  Moreover, Plaintiffs explained that in order to properly invoke FOIA Exemption 7(A) on a categorical basis, as NSD purported to do, it was required first to define the functional categories of the documents it was withholding, review and categorize each, and demonstrate how the release of each category of documents would interfere with an ongoing enforcement proceeding.  *Id.*  NSD took none of these necessary steps.

170.    Plaintiffs also pointed out that it was facially implausible that the release of *any* responsive records in NSD's possession would necessarily interfere with an ongoing investigation—*i.e.*, that *all* responsive records were subject to FOIA Exemption 7(A).  Ex. 29 at 4.  In particular, Plaintiffs explained that some of the records sought were communications with news organizations or related to public DOJ policies—records highly unlikely to fall within Exemption 7(A).  *Id.*  In any event, Plaintiffs contended that it was inconsistent with FOIA for NSD to presume and then invoke an all-encompassing application of an exemption in lieu of an actual search for and review of responsive records.  *Id.*

171.     Under 5 U.S.C. § 552(a)(6)(A)(ii), DOJ's response to Plaintiffs' appeal regarding their request to NSD was due by October 8, 2019.  DOJ failed to respond by this deadline.

172.     On November 25, 2019, more than a month after the deadline to respond, DOJ denied Plaintiffs' appeal.  Ex. 30.  In particular, it stated that "NSD properly withheld [the requested] information in full because it is protected from disclosure under" FOIA Exemption 7(A).  *Id.* at 2.  To support this conclusion, DOJ stated, in general terms, that it was "reasonably foreseeable that confirming or denying the existence of such records would harm the interests protected by" FOIA Exemption 7(A).  *Id.*

173.     DOJ also stated that it could neither confirm nor deny the existence of documents responsive to the portions of Plaintiffs' request seeking records "concerning named third parties" (which DOJ did not define or identify), supposedly because this could "reasonably be expected to constitute an unwarranted invasion of personal privacy," thus triggering FOIA Exemptions 6 and 7(C).  *Id.* at 3.  Further, DOJ stated that NSD "conducted an adequate, reasonable search for such records"—even though, according to NSD's own statement, it had decided not to perform any search at all.  *Id.* at 4.

174.     This type of boilerplate invocation of statutory exemptions is insufficient as a matter of law.  DOJ failed to provide any explanation at all as to why it was "reasonably foreseeable" that each and every responsive record would harm the interests protected by FOIA Exemption 7(A).  DOJ did not explain which portions of Plaintiffs' requests triggered the purported application of FOIA Exemptions 6 and 7(C), or why the purportedly exempt information could not simply be redacted, consistent with FOIA's requirement that agencies produce any "reasonably segregable portion" of a responsive record.  5 U.S.C. § 552(b).  Further, DOJ failed

to address any of Plaintiffs' arguments concerning the inadequacy of NSD's search, or otherwise justify the scope of that search—which, according to NSD, never took place.

175.     To date, NSD has not released any records responsive to Plaintiffs' request.

176.     Plaintiffs have exhausted their administrative remedies with respect to their FOIA request to NSD, as DOJ issued a final ruling on Plaintiffs' appeal.  Accordingly, their claim seeking the release of documents under FOIA is ripe for adjudication under 5 U.S.C. § 552(a)(4)(B).

### 2.     FBI

177.     On May 1, 2019, Plaintiffs submitted their FOIA request to the FBI.  Ex. 6; *supra* ¶¶ 45–46.

178.     On May 22, 2019, Plaintiffs received an acknowledgement that their FOIA request had been received.

179.     The FBI's response to Plaintiffs' FOIA request was due by May 29, 2019.  The FBI failed to respond by that deadline.

180.     On June 13, 2019, the FBI informed Plaintiffs that it had completed its search for records responsive to their request and identified responsive documents, but that all of those documents were located in an "investigative file" and thus purportedly exempt from disclosure under FOIA Exemption 7(A).  Ex. 31 at 1.  The FBI stated that this Exemption applied because "there is a pending or prospective law enforcement proceeding relevant to these responsive records, and release of the information could reasonably be expected to interfere with enforcement proceedings."  *Id.* at 1.  The FBI provided no further detail.  Instead, it referred Plaintiffs to an addendum containing "additional standard responses applicable to [Plaintiffs'] request.  *Id.*  The FBI additionally advised Plaintiffs that their FOIA request was "being administratively closed." *Id.*

34

181.    On July 11, 2019, Plaintiffs responded to inquire about the denial of their FOIA request and obtain more information about the types of documents contained in the "investigative file" that the FBI had identified.  In response, the FBI refused to provide any further information about the categories of responsive documents, and instead referred Plaintiffs to the generic explanations of FOIA Exemption 7(A) contained in the FBI's earlier letter.

182.    On September 11, 2019, Plaintiffs filed an administrative appeal with DOJ pursuant to 5 U.S.C. § 552(a)(6), on the grounds that the FBI improperly withheld responsive records and failed to perform an adequate search.  Ex. 32.

183.    Plaintiffs' appeal challenged the FBI's blanket refusal to produce any responsive documents on the sole basis that they resided in an "investigative file."  *Id.* at 3.  Plaintiffs argued that such conclusory explanation for withholding documents was insufficient and that, even if portions of the responsive documents were subject to FOIA Exemption 7(A), the FBI was required to produce the non-exempt portions (*e.g.*, redacted documents).  *Id.*

184.    Plaintiffs also asserted that the FBI's contention that all responsive documents resided in a single "investigative file"—even though Plaintiffs' request covered multiple topics and categories of communications—raised serious questions about the sufficiency of the FBI's search.  *Id.* at 3–4.  For example, Plaintiffs pointed out that it was highly unlikely that all records relating to the DOJ's China Initiative would be located in a single investigative file, and that that same file would contain all correspondence with Canadian authorities regarding the arrest of Ms. Meng.  *Id.* at 4.

185.    DOJ was required to respond to Plaintiffs' appeal concerning their FOIA request to the FBI by October 8, 2019.  DOJ failed to respond by this deadline.

186.    On November 25, 2019, DOJ denied Plaintiffs' appeal, stating that "[t]he FBI properly withheld [the requested] information in full because it is protected from disclosure under the FOIA pursuant to [FOIA Exemption 7(A)]." Ex. 33 at 2.  To support this conclusion, it stated, in general terms, that it was "reasonably foreseeable that confirming or denying the existence of such records would harm the interests protected by" FOIA Exemption 7(A).  *Id.*

187.    DOJ also stated that it could neither confirm nor deny the existence of documents responsive to the portions of Plaintiffs' request seeking records "concerning third-party individuals" (which DOJ did not define or identify), supposedly because this "would constitute a clearly unwarranted invasion of personal privacy," thus triggering FOIA Exemptions 6 and 7(C). *Id.*  Further, it concluded, without explanation, that the FBI's search was adequate.  *Id.* at 3.

188.    This type of boilerplate invocation of statutory exemptions is insufficient as a matter of law.  DOJ failed to provide any explanation at all as to why it was "reasonably foreseeable" that each and every record sought would harm the interests protected by FOIA Exemption 7(A).  DOJ did not indicate which portions of Plaintiffs' requests triggered the purported application of FOIA Exemptions 6 and 7(C), or why the purportedly exempt information could not simply be redacted, consistent with FOIA's requirement that agencies produce any "reasonably segregable portion" of a responsive record.  And DOJ failed to address any of Plaintiffs' arguments concerning the adequacy of the FBI's search, or otherwise justify the scope of that search.

189.    To date, the FBI has not released any records responsive to Plaintiffs' request.

190.    Plaintiffs have exhausted their administrative remedies with respect to their FOIA request to the FBI, as DOJ issued a final ruling on Plaintiffs' appeal.  Accordingly, their claim

seeking the release of documents under FOIA is ripe for adjudication under 5 U.S.C. § 552(a)(4)(B).

### 3.    USTR

191.    On May 2, 2019, Plaintiffs submitted their FOIA request to USTR.  Ex. 10; *supra* ¶¶ 45–46.

192.    On May 2, 2019, USTR confirmed receipt of Plaintiffs request via email and indicated that it would provide them with a response on or before May 30, 2019.

193.    On May 30, 2019, USTR sent an email to Plaintiffs that it described as a "partial response" to their FOIA request.  That email stated that USTR was not able to locate records responsive to certain portions of Plaintiffs request, and asked for further clarification on other portions of the request.

194.    In the weeks and months that followed, Plaintiffs communicated with USTR regarding search terms for the outstanding portion of their FOIA request.  Plaintiffs made clear that their agreement to provide an initial set of search terms was without waiver of their right to obtain any and all records responsive to their FOIA requests, whether or not those records were identified as part of this initial search.

195.    On September 17, 2019, USTR advised Plaintiffs that its searches pursuant to the terms provided by Plaintiffs had yielded a total of eleven pages of responsive records.  Ex. 34 at 2.  Those eleven pages were released to Plaintiffs on the same date.  *Id.*  USTR also advised Plaintiffs that it was closing their FOIA request.  *Id.*

196.    The eleven pages of released records were redacted in part by USTR, which claimed that the redacted information was "protected from disclosure under the deliberative process privilege," *i.e.*, FOIA Exemption 5.  *Id.*  According to USTR, the redacted information was covered by this privilege because it included "internal government discussions and

recommendations regarding Huawei and Ms. Meng" which reflected "the personal opinions of the writers rather than a decision or policy of the agency." *Id.*

197.    On September 25, 2019, Plaintiffs emailed USTR seeking clarification regarding the results of USTR's search.  In particular, Plaintiffs inquired as to whether USTR had withheld any documents in full, and whether every search string provided had been in fact been performed. On October 8, 2019, USTR responded that no documents had been withheld in full and that the eleven pages of records reflected the results of the broadest set of initial search terms Plaintiffs had provided.

198.    On November 5, 2019, Plaintiffs filed an administrative appeal pursuant to 5 U.S.C. § 552(a)(6) on the grounds that USTR performed an inadequate search and improperly withheld material relevant to Plaintiffs' FOIA request. Ex. 35.

199.    In particular, Plaintiffs pointed out that it was extremely unlikely that there were no responsive records at all with respect to the majority of their requests, in light of publicly available information establishing that USTR has played a leading role in ongoing trade negotiations with China and that Plaintiffs and their corporate affiliates have been mentioned as part of those trade negotiations. *Id.* at 4–5.

200.    Further, Plaintiffs challenged USTR's decision to close Plaintiffs' FOIA request after performing searches using only the initial set of search terms that Plaintiffs had supplied to USTR at USTR's request.  *Id.* at 5.  As Plaintiffs explained, these search terms were intended to assist USTR in prioritizing and refining its search, and did not relieve USTR of its obligation to perform a complete and thorough search for all potentially responsive documents.  *Id.*

201.    Moreover, Plaintiffs challenged the application of FOIA Exemption 5, explaining that USTR failed to meet its burden of demonstrating that this Exemption applies.  *Id.*  Specifically,

Plaintiffs noted that USTR had done nothing to establish that this Exemption applied other than repeat the language of the statute.  Plaintiffs further pointed out that, based on their reasonable inferences from the unredacted content of the pages USTR had produced, it was unlikely that the redacted content was covered by FOIA Exemption 5.  *Id.* at 5–6.  For example, certain inter-agency communications that USTR had produced and redacted appeared to explain decisions that had already been made, which are not subject to the deliberative process privilege embodied in FOIA Exemption 5.  *Id.*

202.    USTR's response to Plaintiffs' appeal was due on December 6, 2019.  USTR failed to respond by this deadline.

203.    On December 9, 2019, USTR denied Plaintiffs' appeal.  Ex. 36.  It rejected Plaintiffs' request that USTR perform additional searches, stating that, in its view, USTR's search was adequate.  *Id.* at 2.  Additionally, it stated that the majority of the redactions made pursuant to FOIA Exemption 5 were justified, although it released certain previously redacted information on two of the eleven pages of records.  *Id.* at 3.

204.    This boilerplate invocation of Exemption 5 is insufficient as a matter of law.  USTR failed to explain why its withholding of the remainder of material is proper under Exemption 5, beyond concluding that "the information is both pre-decisional and deliberative in nature, the release of which would cause foreseeable harm to USTR's deliberative process."  *Id.*  It failed to explain why the content withheld was "pre-decisional" or "deliberative" and why it would cause harm to USTR's deliberative process if such records were disclosed.  Regarding the adequacy of USTR's search, USTR failed to address Plaintiffs' argument that USTR erred in relying solely on Plaintiffs' initial proposed search terms, provided to USTR at USTR's request.

205.    Plaintiffs have exhausted their administrative remedies with respect to their FOIA request to USTR, as USTR issued a final ruling on Plaintiffs' appeal.  Accordingly, their claim seeking the release of documents under FOIA is ripe for adjudication under 5 U.S.C. § 552(a)(4)(B).

## PLAINTIFFS' REQUESTS FOR EXPEDITED PROCESSING

206.    In addition to failing to respond appropriately (or at all) to Plaintiffs' FOIA requests, Defendants Commerce, DHS, DOJ, OMB, and USTR (collectively, the "Expedited Processing Defendants") have failed to accord the requests directed at them or their components expedited treatment, as required under applicable regulations.

207.    An agency must process a FOIA request on an expedited basis where the requestor has demonstrated that the request qualifies for such treatment under FOIA or corresponding regulations.

208.    Here, Commerce, DHS, DOJ, OMB, and USTR regulations—which together cover all the FOIA requests addressed in this Complaint except for the requests to Treasury, OFAC, and the State Department—each provide for expedited processing of FOIA requests directed at them or their components that involve matters of widespread and exceptional media interest and raise possible questions about the government's integrity which affect public confidence.

209.    Plaintiffs' requests for expedited treatment to the Expedited Processing Defendants demonstrated that Plaintiffs' FOIA requests easily satisfy this standard.  Yet, as summarized in the chart below, the Expedited Processing Defendants either denied Plaintiffs' requests for expedited processing with little or no explanation, or else failed to respond to them at all.  Neither set of outcomes is acceptable.

210.    Plaintiffs' claim based on the Expedited Processing Defendants' express or constructive denial of their request for expedited processing of their FOIA requests is ripe for

adjudication because each of these Defendants has either taken "action to deny . . . a request for expedited processing" or "fail[ed] to respond in a timely manner to such a request."  5 U.S.C. § 552(a)(6)(E)(iii).

| EXPEDITED PROCESSING REQUESTS — Deadlines and Responses | | | | | |
|---|---|---|---|---|---|
| Defendant Agency | Applicable Regulation | FOIA Request at Issue | Date of Request for Expedited Processing | Date of Response to Request for Expedited Processing | Explanation of Denial |
| Commerce | 15 C.F.R. § 4.6(f)(1)(iii) | Commerce Request | May 9, 2019 | None | N/A |
| DHS | 6 C.F.R. § 5.5(e)(1)(iv) | DHS Request | May 9, 2019 | None | N/A |
| DHS | 6 C.F.R. § 5.5(e)(1)(iv) | ICE Request | May 9, 2019 | None | N/A |
| DOJ | 28 C.F.R. § 16.5(e)(1)(4) | DOJ Leadership Request | May 9, 2019 | May 10, 2019 (Denied) | Director of Public Affairs "determined that [Plaintiffs'] request for expedited processing should be denied." |
| DOJ | 28 C.F.R. § 16.5(e)(1)(4) | NSD Request | May 9, 2019 | None | N/A |
| DOJ | 28 C.F.R. § 16.5(e)(1)(4) | Criminal Division Request | May 9, 2019 | May 10, 2019 (Denied) | Director of Public Affairs "determined that [Plaintiffs'] request for expedited processing should be denied." |
| DOJ | 28 C.F.R. § 16.5(e)(1)(4) | FBI Request | May 9, 2019 | May 23, 2019 (Denied) | Plaintiffs did "not provide[] enough information concerning the statutory requirements for expedition." |
| OMB | 5 C.F.R. § 1303.40(e)(1)(i) | OMB Request | September 23, 2019 | None | N/A |

| EXPEDITED PROCESSING REQUESTS — Deadlines and Responses | | | | | |
|---|---|---|---|---|---|
| Defendant Agency | Applicable Regulation | FOIA Request at Issue | Date of Request for Expedited Processing | Date of Response to Request for Expedited Processing | Explanation of Denial |
| USTR | 15 C.F.R. § 2004.6(d)(2)(iv) | USTR Request | May 9, 2019 | May 16, 2019 (Denied) | Plaintiffs did "not identify possible questions about the government's integrity that affect public confidence" or "explain how USTR communications about Huawei and Ms. Meng would shed light on these types of possible questions." |

## I.        Statutory and Regulatory Framework

211.    FOIA requires each agency to promulgate regulations providing for expedited processing of requests for records "in cases in which the person requesting the records demonstrates a compelling need" and "in other cases determined by the agency."  5 U.S.C. § 552(a)(6)(E).

212.    Pursuant to this provision, Commerce, OMB, DHS, and DOJ have promulgated regulations providing for expedited processing where, *inter alia*, the request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  15 C.F.R. § 4.6(f)(1)(iii) (Commerce), 6 C.F.R. § 5.5(e)(1)(iv) (DHS); 28 C.F.R. § 16.5(e)(1)(iv) (DOJ); 5 C.F.R. § 1303.40(e)(1)(iv) (OMB).

213.    Similarly, USTR regulations state that a FOIA request will be accorded expedited treatment where "the subject is of widespread and exceptional media interest and the information sought involves possible questions about the government's integrity that affect public confidence." 15 C.F.R. § 2004.6(d)(2)(iv).

214.    Each of these regulations requires that an agency respond to a request for expedited processing within 10 days of its receipt thereof.  15 C.F.R. § 4.6(f)(4) (Commerce); 6 C.F.R. § 5.5(e)(4) (DHS); 28 C.F.R. § 16.5(e)(4) (DOJ); 15 C.F.R. § 2004.6(d)(3) (USTR); 5 C.F.R. § 1303.40(e)(4) (OMB).

215.    If the agency grants a request for expedited processing, both FOIA and the corresponding regulations require that the agency process the relevant FOIA request "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii) (FOIA); 15 C.F.R. § 4.6(f)(4) (Commerce); 6 C.F.R. § 5.5(b), (e)(4) (DHS); 28 C.F.R. § 16.5(b), (e)(4) (DOJ); 15 C.F.R. § 2004.6(d)(3) (USTR); 5 C.F.R. § 1303.40(e)(4) (OMB).  Indeed, the regulations each require that FOIA requests subject to expedited processing be placed in a distinct "processing track" and given priority.  6 C.F.R. § 5.5(b), (e)(4) (DHS); 28 C.F.R. § 16.5(b), (e)(4) (DOJ); 15 C.F.R. § 2004.6(d)(3) (USTR); 5 C.F.R. § 1303.40(b)(1)(i) (OMB).

216.    An agency's denial or failure to timely respond to a request for expedited processing is subject to judicial review under 5 U.S.C. § 552(a)(6)(E)(iii), so long as the agency has not yet provided a complete response to the requestor's underlying FOIA request, 5 U.S.C. § 552(a)(6)(E)(iv).  A requestor is not required to file an administrative appeal of an agency's denial of expedited processing.  5 U.S.C. § 552(a)(6)(E)(iii).

## II.     Facts

### A.     Plaintiffs' Requests

217.     On May 9, 2019, Plaintiffs submitted substantively identical requests to each of the Expedited Processing Defendants except OMB, consistent with applicable regulations, requesting that they or their components accord Plaintiffs' FOIA requests expedited treatment on the ground that they involve matters of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.  Exs. 37–40. Additionally on September 23, 2019, Plaintiffs submitted a substantively identical request to Defendant OMB for expedited processing of Plaintiffs' FOIA request to OMB.  Ex. 7.

218.     Collectively, Plaintiffs' requests for expedited treatment covered nine of the twelve FOIA requests that give rise to this Complaint.[19]

219.     Plaintiffs' requests for expedited processing were amply supported.  Each letter identified more than 40 news articles from over 20 different publications, including major news outlets such as CNN, the *New York Times*, the *Washington Post*, the *Wall Street Journal*, CBS News, ABC News, the BBC, *Reuters*, NPR, *Bloomberg*, *Forbes*, and *Politico*.  Exs. 37–40.

220.     These articles show that, not only is the level of media interest exceptional, but it is enduring.  The cited articles span nearly six months, from Ms. Meng's arrest on December 2018 to May 2019.

221.     Moreover, the reporting raises compelling questions about the government's integrity—*i.e.*, regarding the true motivations and object of the government's prosecution of Plaintiffs.  For example, as explained in Plaintiffs' submission, both CNN and *Reuters* reported a

---

[19] As noted *supra* note 14, Treasury and State do not recognize this basis for granting expedited processing.

statement by President Trump that he would intervene in the prosecution of Plaintiffs and Ms. Meng for a favorable U.S.-China trade deal: "'If I think it's good for what will be certainly the largest trade deal ever made—which is a very important thing—what's good for national security—I would certainly intervene if I thought it was necessary.'"[20]

222.    In a CNBC article reporting on President Trump's statement, a legal commentator explained why President Trump's statements cast doubt on the government's integrity: "The Department of Justice is empowered to enforce federal law fairly, untainted by political or geopolitical considerations . . . .  The suggestion that the Department could—or should—be used to achieve an objective unrelated to the fair administration of justice erodes public confidence, both domestically and on a global stage.  This is understandable and explains why, historically, U.S. presidents have carefully refrained from comments of the sort we see increasingly from the current administration."[21]

223.    Plaintiffs also cited a number of articles addressing the Trump administration's efforts to encourage allies not to use Plaintiffs' 5G equipment, and the Trump administration's encouragement of U.S. companies to develop their own 5G capabilities.[22]

---

[20] Betsy Klein & Ben Westcott, Trump Expresses Openness to Using Huawei CFO as Bargaining Chip in China Trade Talks, CNN (Dec. 12, 2018), https://www.cnn.com/2018/12/12/politics/trump-china-huawei-cfo/index.html; Steve Holland, Jeff Mason, & Roberta Rampton, Trump says would intervene in arrest of Chinese executive, Reuters (Dec. 11, 2018).

[21] Kate Fazzini, Huawei CFO Defense Will Center on President Trump's Trade Comments, CNBC (Mar. 6, 2019), https://www.cnbc.com/2019/03/06/huawei-cfo-defense-will-center-on-president-trum ps-tradecomments.html.

[22] Brian Fung, How China's Huawei Took the Lead Over U.S. Companies in 5G Technology, Wash. Post (Apr. 10, 2019), https://www.washingtonpost.com/technology/2019/04/10/us-spat-with-huawei-explained/?utm term=.248c0919c161; Brian Fung, 5G Is About to Get a Big Boost from Trump and the FCC, Wash. Post (Apr. 12, 2019), https://www.washingtonpost.com/techno

224.    A review of even a fraction of the many articles Plaintiffs cited in their requests for expedited processing makes clear they satisfy the standard set forth in the applicable regulations, and that accordingly, expedited processing is fully appropriate here.

225.    Media coverage of and interest in the topics that are the subject of Plaintiffs' FOIA requests has continued unabated in the months since Plaintiffs filed their requests for expedited processing, and such coverage continues to raise serious questions about the government's integrity.[23]

226.    For example, a December 10, 2019, *Reuters* article reported on a recent decision from the Supreme Court of British Columbia ordering the production of additional documents in

---

logy/2019/04/12/g-is-about-get-b i g-boost-trumpfccflutmterm=.bce85b731e88; Yoko Kubota & Dan Strumpf, China Investigates Ericsson Over Licensing as 5G Competition Heats Up, Wall Street J. (Apr. 15, 2019), https://www.wsj.com/articles/china-investigates-ericsson-over-licensing-as-5g-competition-heats-up-11555332158.

[23] *See, e.g.*, Patrick Wintour, Huawei: U.S. Asked for Meng Wanzhou Devices to be Secured at Arrest, Court Hears, The Guardian (Oct. 26, 2020), https://www.theguardian.com/technology/2020/oct/27/huawei-us-asked-for-meng-wanzhous-devices-to-be-secured-at-arrest-court-hears; Dan Strumpf and Chuin-Wei Yap, Huawei Accuses the U.S. of Cyberattacks and Staff Threats, Wall St. J. (Sept. 3, 2019), https://www.wsj.com/articles/huawei-accuses-the-u-s-of-cyberattacks-threatening-its-employees-11567500484; Jim Morris & Rob Gillies, Extradition Hearing Begins for Top Huawei Exec in Canada, U.S News.com (Jan. 20, 2020), https://www.usnews.com/news/business/articles/2020-01-20/extradition-hearing-for-huawei-executive-begins-in-canada; Michael Peel, Helen Warrell, and Guy Chazan, US Warns Europe Against Embracing China's 5G Technology, Financial Times (Feb. 16, 2020), https://www.ft.com/content/19fa7046-4fe5-11ea-8841-482eed0038b1; Joseph Marks, The Cybersecurity 202: Huawei Official Accuses U.S. of Targeting the Telecom to Hurt China, Wash. Post (Feb. 27, 2020), https://www.washingtonpost.com/news/powerpost/paloma/the-cybersecurity-202/2020/02/27/the-cybersecurity-202-huawei-official-accuses-u-s-of-targeting-the-telecom-to-hurt-china/5e570f7a88e0fa632ba8476b/; Ellen Nakashima, Trump Administration Moves Against Chinese Telecom Firms Citing National Security, Wash. Post (Apr. 10, 2020), https://www.washingtonpost.com/national-security/trump-administration-moves-against-chinese-telecom-firms-citing-national-security/2020/04/10/33532492-7b24-11ea-9bee-c5bf9d2e3288_story.html.

connection with Ms. Meng's challenge to "her extradition in the Canadian courts on grounds that the United States is using it for economic and political gain."[24]  Although the court did not rule on the merits of Ms. Meng's challenge, it observed that she had raised questions "beyond the frivolous or speculative about the chain of events" leading to her arrest.

227.    Similarly, a June 2019 article from *The Hill* reported on statements from U.S. Senators about the risks of "bargain[ing] away" restrictions on Plaintiffs and their corporate affiliates and identifying them as "one of few potent levers we have to make China play fair on trade."[25]

228.    Further, a February 2020 article from the *Washington Post* reported on comments made by Attorney General William Barr:

> In his first major speech about China, Barr said the United States and its allies must "act collectively" or risk putting "their economic fate in China's hands."  He focused particular ire on Huawei, the world's largest supplier of 5G telecom gear that will power self-driving cars, smart homes, smart transportation systems and more . . . .   In training his fire on China's drive to conquer the world market for 5G, he was lending his voice to the administration's push to keep Chinese suppliers out of super-fast networks.  "If China establishes sole dominance over 5G, it will be able to dominate the opportunities arising from a stunning range of emerging technologies that will be dependent on, and interwoven with, the 5G platform."[26]

---

[24] David Kirton and Moira Warburton, <u>Huawei's CFO Wins Canada Court Fight to See More Documents on Her Arrest</u>, Reuters (Dec. 10, 2019), https://www.reuters.com/article/us-usa-huawei-tech-canada/huaweis-cfo-wins-canada-court-fight-to-see-more-documents-on-her-arrest-idUSKBN1YE2NW.

[25] John Bowden, <u>Rubio Calls for Legislation to Keep Huawei Restrictions in Place</u>, The Hill (June 29, 2019), https://thehill.com/homenews/senate/451008-rubio-calls-for-legislation-to-keep-huawei-restrictions-in-place.

[26] Ellen Nakashima and Jeanne Whalen, <u>Barr Suggests U.S. Consider Investing in Nokia, Ericsson to Counter Huawei</u>, Wash. Post (Feb. 6, 2020), https://www.washingtonpost.com/national-security/barr-warns-against-chinese-dominance-of-5g-super-fast-networks/2020/02/06/1da26794-48ec-11ea-9164-d3154ad8a5cd_story.html.

### B.      Defendants' Denials

#### 1.      Commerce

229.      On May 9, 2019, Plaintiffs submitted a request to Commerce for expedited processing of their FOIA request to Commerce.  Ex. 37.  As described more fully above, the letter set forth in detail Plaintiffs' basis for seeking expedited processing of their FOIA request pursuant to 15 C.F.R. § 4.6(f)(1)(iii), citing numerous articles that demonstrated the exceptional media interest in the subjects covered by Plaintiffs' FOIA request and the clear questions of government integrity that their request implicates.

230.      Commerce was required to respond to Plaintiffs' request for expedited processing within 10 days of its receipt thereof.

231.      To date, Commerce has failed to respond.  As Commerce has failed to respond in a timely manner, Plaintiffs' claim for wrongful denial of expedited processing is ripe for adjudication under 5 U.S.C. § 552(a)(6)(E)(iii).

#### 2.      DHS

232.      On May 9, 2019, Plaintiffs submitted a request to DHS for expedited processing of their FOIA request to ICE.  Ex. 38.[27]  As described more fully above, the letter set forth in detail Plaintiffs' basis for seeking expedited processing of their FOIA request pursuant to 6 C.F.R. § 5.5(e)(1)(iv), citing numerous articles that demonstrated the exceptional media interest in the subjects covered by Plaintiffs' FOIA request and the clear questions of government integrity that their request implicates.

---

[27] Consistent with 6 C.F.R. § 5.5(e)(2), this request for expedited processing was sent by letter to the Senior Director of FOIA Operations at DHS's Privacy Office, rather than to ICE directly.

233.   DHS was required to respond to Plaintiffs' request for expedited processing within 10 days of its receipt thereof.

234.   To date, DHS has failed to respond.  As DHS has failed to respond in a timely manner, Plaintiffs' claim for wrongful denial of expedited processing is ripe for adjudication under 5 U.S.C. § 552(a)(6)(E)(iii).

### 3.   DOJ

235.   On May 9, 2019, Plaintiffs submitted letters to DOJ requesting expedited processing of their FOIA requests to the DOJ Component Defendants.  Ex. 39.[28]  As described more fully above, these letters set forth in detail Plaintiffs' basis for requesting expedited processing of their FOIA requests pursuant to 28 C.F.R. § 16.5(e)(1)(iv), citing numerous articles that demonstrated the exceptional media interest in the subjects covered by Plaintiffs' FOIA requests and the clear questions of government integrity that their requests implicate.

236.   DOJ was required to respond to Plaintiffs' requests for expedited processing within 10 days of its receipt thereof.

237.   On May 10, 2019, DOJ notified Plaintiffs that their request for expedited treatment of their FOIA request to the Criminal Division was denied.  Ex. 41.  The letter did not provide any explanation for the denial beyond stating that the Director of Public Affairs "has determined that [Huawei's] request for expedited processing should be denied."  *Id.*

238.   On the very same day, May 10, 2019, DOJ notified Plaintiffs that their request for expedited treatment of their FOIA request to DOJ Leadership was denied.  Ex. 19.  This letter also

---

[28] Each request for expedited processing was submitted by facsimile to the Director of Public Affairs at DOJ's Office of Public Affairs, consistent with 28 C.F.R. § 16.5(e)(2).

provided no explanation for the denial and merely stated that the Director of Public Affairs "has determined that [Plaintiffs'] request for expedited processing should be denied." *Id.*

239.    On May 23, 2019, Plaintiffs received a letter denying Plaintiffs' request for expedited treatment of their FOIA request to the FBI. Ex. 42. The letter provided a vague, one-sentence explanation, stating merely that Plaintiffs had "not provided enough information concerning the statutory requirements for expedition." *Id.*

240.    To date, Plaintiffs have received no response concerning their request for expedited processing of their FOIA request to NSD.

241.    DOJ's denials were unexplained and unreasonable. Tellingly, not one of DOJ's denial letters engaged in any way with the evidence Plaintiffs provided of media interest and questions of government integrity—the regulatory basis for Plaintiffs' requests for expedited treatment.

242.    As DOJ has either denied or failed to respond to Plaintiffs' requests for expedited processing of their FOIA requests to the DOJ Component Defendants, Plaintiffs' claim for wrongful denial of expedited processing of these requests is ripe for adjudication under 5 U.S.C. § 552(a)(6)(E)(iii).

### 4.    OMB

243.    On September 23, 2019, Plaintiffs requested expedited processing of their FOIA request to OMB. Ex. 7.

244.    As described more fully above, this request set forth in detail Plaintiffs' basis for requesting expedited processing of their FOIA request pursuant to 5 C.F.R. § 1303.40(e)(1)(iv), citing numerous articles that demonstrated the exceptional media interest in the subjects covered by Plaintiffs' FOIA request and the clear questions of government integrity that their request implicates.

245. To date, OMB has failed to respond. As OMB has failed to respond in a timely manner, Plaintiffs' claim for wrongful denial of expedited processing is ripe for adjudication under 5 U.S.C. § 552(a)(6)(E)(iii).

### 5. USTR

246. On May 9, 2019, Plaintiffs submitted a requested for expedited processing of their FOIA request to USTR. Ex. 43. As described more fully above, the letter set forth in detail Plaintiffs' basis for requesting expedited processing of their FOIA request under 15 C.F.R. § 2004.6(d)(2)(iv), citing numerous articles that demonstrated the exceptional media interest in the subjects covered by Plaintiffs' FOIA request and the clear questions of government integrity that their request implicates.

247. On May 16, 2019, USTR denied Plaintiffs' request for expedited processing on the basis that it did "not identify possible questions about the government's integrity that affect public confidence" or "explain how USTR communications about Huawei and Ms. Meng would shed light on these types of possible questions," and because Plaintiffs' request was "the first such FOIA request related to the EDNY Indictment, the arrest of Ms. Meng, or 5G technology and related competition since January 20, 2017." Ex. 43 at 2.

248. USTR's denial was unreasonable, given the sheer volume of media coverage cited in Plaintiffs' request for expedited treatment, and the fact that, as discussed above, that media coverage clearly raised questions about the government's integrity and the public's trust in federal institutions. Indeed, that Plaintiffs' FOIA request was, in USTR's view, novel, does not negate the intense and ongoing media interest in the matters covered in that request.

249. As USTR took action to deny Plaintiffs' request for expedited treatment, Plaintiffs' claim based on that denial is ripe for adjudication under 5 U.S.C. § 552(a)(6)(E)(iii).

## FIRST CAUSE OF ACTION
## FAILURE TO PRODUCE RECORDS IN VIOLATION OF FOIA
### *Against All Defendants*

250.     Plaintiffs incorporate and reallege in full paragraphs 1–249 of this Complaint as if fully set forth herein.

251.     Defendants are agencies or components thereof that are required to promptly disclose responsive records in their possession at the time of a request, 5 U.S.C. § 552(a)(3)(A), and provide lawful reason for withholding any responsive records as to which they are claiming an exemption, *id.* § 552(a)(6)(A)(i).

252.     Defendants Commerce, DHS, ICE, DOJ Leadership, Criminal Division, DOJ, OMB, Treasury, OFAC, and State Department have wrongfully withheld agency records requested by Plaintiffs by failing to comply with the statutory time limit for responding to Plaintiffs' requests and/or by failing to order the production of responsive records in response to Plaintiffs' administrative appeals.

253.     Defendants NSD, FBI, DOJ, and USTR have wrongfully withheld agency records by refusing to perform an adequate search for or to release responsive, non-exempt records, and/or by failing to order the production of responsive records in response to Plaintiffs' administrative appeals.   These Defendants have failed to adequately justify the application of particular exemptions that they claim apply, to provide segregable non-exempt portions of responsive records, or to provide indices justifying the withholding of any responsive records.

254.     Injunctive relief is appropriate to remedy Defendants' failure to release records responsive to Plaintiffs' requests.

## SECOND CAUSE OF ACTION
## FAILURE TO GRANT EXPEDITED PROCESSING IN VIOLATION OF FOIA
### *Against DHS, DOJ, OMB, and USTR*

255.    Plaintiffs incorporate and reallege in full paragraphs 1–254 of this Complaint as if fully set forth herein.

256.    Under applicable agency regulations promulgated pursuant to 5 U.S.C. § 552(a)(6)(E), a FOIA request is subject to expedited processing where it involves "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 15 C.F.R. § 4.6(f)(1)(iii) (Commerce); 28 C.F.R. §§ 16.5(e)(1)(iv) (DOJ); 6 C.F.R. §§ 5.5(e)(1)(iv) (DHS); 15 C.F.R. § 2004.6(1)(iii) (USTR).

257.    Plaintiffs properly sought expedited processing of their FOIA request to Commerce by filing a request with Commerce.

258.    Plaintiffs properly sought expedited processing of their FOIA requests to DHS and ICE by filing a request with DHS.

259.    Plaintiffs properly sought expedited processing of their FOIA requests to DOJ Leadership, the Criminal Division, NSD, and the FBI, by filing a request with DOJ.

260.    Plaintiffs properly sought expedited processing of their FOIA request to OMB by filing a request with OMB.

261.    Plaintiffs properly sought expedited processing of their FOIA request to USTR by filing a request with USTR.

262.    Commerce, DHS, DOJ, OMB, and USTR either failed entirely to respond to Plaintiffs' request for expedited processing of the corresponding FOIA request(s), or else summarily denied Plaintiffs' request.

263.    Each Defendant's denial or constructive denial was unreasonable in light of Plaintiffs' clear showing that their request satisfies the standard set forth in the relevant agency regulations.

264.    Each Defendant's denial or constructive denial violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendants' corresponding regulations.

265.    The Court has jurisdiction over this claim because Defendants have not provided complete responses to any of Plaintiffs' FOIA requests.  5 U.S.C. § 552(a)(6)(E)(iv).

266.    Injunctive relief is appropriate to remedy these Defendants' failures to grant expedited processing of Plaintiffs' FOIA requests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Order Defendants Commerce, DHS, DOJ, OMB, and USTR to accord Plaintiffs' FOIA requests expedited processing;

B.    Order all Defendants to immediately conduct a reasonable search for all responsive records;

C.    Order all Defendants immediately to produce any and all non-exempt records or portions thereof responsive to Plaintiffs' requests, as well as indices of any records or portions of records withheld on the basis of a claimed exemption;

D.    Enjoin all Defendants from improperly withholding records responsive to Plaintiffs' request;

E.    Retain jurisdiction of this action to ensure no agency records are wrongfully withheld and order all Defendants to disclose any wrongfully withheld records;

F.    Award reasonable attorneys' fees and costs under 5 U.S.C. § 552(a)(4)(E); and

G.    Grant other relief as the Court may deem just and proper.

Respectfully submitted,

JENNER & BLOCK LLP                          SIDLEY AUSTIN LLP


/s/ Corinne M. Smith                        /s/ Kwaku A. Akowuah

Corinne M. Smith (No. 1025616)              Kwaku A. Akowuah (No. 992575)
1099 New York Ave., N.W., Suite 900         Frank R. Volpe (No. 458791)
Washington, D.C. 20001                      Daniel J. Hay (No. 1047969)
Telephone: (202) 639-6000                   1501 K Street, N.W., Suite 600
Facsimile: (202) 639-6066                   Washington, DC 20005
csmith@jenner.com                           Telephone: (202) 736-8000
                                            Facsimile: (202) 736-8711
                                            kakowuah@sidley.com
Brian J. Fischer (*pro hac vice* application to    fvolpe@sidley.com
be filed)                                   dhay@sidley.com
Olivia G. Hoffman (*pro hac vice* application
to be filed)
Tessa J. G. Roberts (*pro hac vice* application    Caitlin N. Matheny (*pro hac vice* application
to be filed)                                to be filed)
919 Third Avenue                            787 7th Ave, New York, NY 10019
New York, NY 10022                          Telephone: (212) 839-5300
Telephone: (212) 891-1600                   Facsimile: (212) 839-5599
Facsimile: (212) 891-1699                   cmatheny@sidley.com
bfischer@jenner.com
ohoffman@jenner.com
troberts@jenner.com


*Counsel for Plaintiffs Huawei Technologies Co., Ltd. and Huawei Device USA Inc.*